**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MAJOR DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  11-2309** |
| **JOHNELL YOUNG, ET AL.** | **SECTION "J"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On October 24, 2011, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2]  Upon review of the entire record, the Court has determined that portions of this case can be disposed of without an evidentiary hearing.

### I.      Factual Background

#### A.      The Complaint

The plaintiff, Major Davis ("Davis"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Corporal Johnell Young, Deputy Jason Saltalmachia, Corporal

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]R. Doc. No. 17.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

John Scheurman, Lieutenant Richard Mendel, and Lieutenant Raymond Theriot, each in their individual capacity, and former St. Bernard Parish Sheriff Jack Stephens, in his official capacity.

Davis alleges that, on September 16, 2010, he dropped off two sisters, Brittany and Ieshia Bressards, at the Walmart in Chalmette, Louisiana. When he later returned to the Walmart to pick them up, the license plate on his Chevy Avalanche truck was reported to police in connection with a possible theft at the store. As he drove into Orleans Parish, he was stopped by vehicles from the St. Bernard Parish Sheriff's Office.

He further claims that Corporal Young and Deputy Saltalmachia exited an unmarked truck with guns drawn and yelling with profanities for him to get out of his truck with his hands in the air. Davis indicates that he exited his truck asking what he had done. Corporal Young continued to order that he put his hands in the air and then suddenly holstered his gun and grabbed Davis around the waist to pull him to the ground. Davis claims that Deputy Saltalmachia holstered his gun and hit Davis across the head and face several times with his baton. He also states that Corporal Scheurman also punched him in the face, and Lieutenants Mendel and Theriot also beat him with their batons on the legs.

He contends that, when he was finally handcuffed on the ground, the defendants all kicked him hard in the face several times. Then, Deputy Saltalmachia sprayed him in the face with a can of mace and commented that he would have to stay in New Orleans if he wanted to steal.

Davis further alleges that the beatings placed him in need of immediate medical attention, but his requests were denied. He claims that parts of his face stayed discolored, and he suffered bruises on his wrist and left leg. He also claims that he now needs braces on his teeth.

He indicates that each of the deputies used excessive force against him and failed to intervene in the misuse of force by the others in violation of the Eighth Amendment. He further claims that

the attack was unprovoked and amounted to the torts of assault and battery under Louisiana law. He further claims that the deputies exhibited deliberate indifference to his medical needs also in violation of the Eighth Amendment. He also contends that Sheriff Stephens failed to curb the use of force by his deputies in violation of the Eighth Amendment and Louisiana law.

As relief, Davis requests that immediate arrangements be made for him to receive a doctor's care for the discoloration to his face and bruises, and braces for his teeth. He also requests that he be released from jail to the Louisiana Parole Board and that the arrest and charges be dismissed and expunged from his record. He also seeks compensatory damages totaling $110,000 from the deputies, jointly and severally, for emotional distress and physical injuries resulting from the use of force and the denial of medical care, and $10,000 from Sheriff Stephens for failure to prevent the injury to plaintiff. He asks for punitive damages in the amount of $20,000 from each deputy and $10,000 from Sheriff Stephens.

### B.       The *Spears* Hearing

Davis testified that, on September 16, 2010, he gave Brittany and Ieshia Bressards a ride to the Walmart in Chalmette, Louisiana. They called him about 30 minutes later to come back for them. As they headed back into Orleans Parish on Claiborne Avenue, several St. Bernard Parish Sheriff's cars surrounded his vehicle. He exited his truck and asked the officer what was wrong. Deputy Young had his gun out and so did Deputy Saltalmachia. Young began yelling and cursing at him. Young put his gun away and grabbed Davis around his waist. Davis grabbed Young back to keep his balance and to stop Young from pushing him to the ground. Davis stated that he spread his feet out to keep the officer from taking him down. At that time, Deputy Saltalmachia put his gun away and went to assist. Young got Davis to the ground and Saltalmachia hit Davis across the head and face with his baton. Corporal Scheurman also came over and punched Davis in the face with his

closed fists. Davis also recalled that Lieutenants Mendel and Theriot joined in, but he was not sure who was hitting him once he fell to the ground.

Davis stated that the officers continued to hit and kick him while he was on the ground, even after he was handcuffed. He indicated that, although he was not resisting, it took all five officers to get him into the handcuffs. He claimed that he only raised his hands to defend himself from the officers' blows. He further recalled that, after he was cuffed, he was kicked in the face and pepper sprayed.

Davis also testified that he was charged with several counts of resisting arrest and battery on the police officer. He claims that these charges were never accepted by the district attorney. He also received charges for flight from an officer, theft by access card, and possession of marijuana, which was found in Ieshia's purse. The two women entered pleas of guilty. Davis was tried before Judge Kirk Vaughn. He was convicted of theft, for which he received six months, and flight from an officer, for which he received 30 days. He was found not guilty on the possession of marijuana charge. He anticipates his release on November 2, 2013, because his parole on a prior armed robbery conviction was revoked.

He stated that he is pursuing an appeal from his convictions. He noted that Ieshia testified that he had nothing to do with the theft and an employee from Wal-mart also testified that he never entered the store. He also complains that the officers stopped him after he crossed into Orleans Parish without contacting the proper authorities that they left their jurisdiction.

Davis indicated that he is not sure who hit him once he was on the ground. He believes that it was primarily Deputy Saltalmachia who was responsible for the beating. He also alleged that Young provoked the incident by using vulgar language and grabbing him. Davis recalled that Young testified at one hearing that he was wrong for using force when he first approached Davis. He also

claims that he was denied medical care at the scene. An ambulance was called to the scene, but they treated the officers and not Davis.

Davis also testified that he sued Sheriff Stephens in his official capacity as the employer and supervisor over the deputies. He alleged that the Sheriff failed to assure that his deputies would not violate a citizen's rights by beating him. He indicated that the Sheriff failed to fully train the officers, and the officers did not listen to the training. He also claims that the Sheriff may not have properly disciplined the officers if they were involved in prior excessive force incidents. Davis ultimately resolved that he sued Sheriff Stephens in his official capacity as the employer and supervisor over the other officers, because the Sheriff knew nothing about the incident itself.

## II.     Standards of a Frivolousness Review

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must

5

determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly

baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v.*

*Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.     Analysis

### A.     Claims Against Sheriff Stephens

Davis has named Sheriff Stephens in his official capacity in his role as employer and

supervisory official over the deputies involved in his arrest. His claims against the Sheriff are

frivolous.

The United States Fifth Circuit Court of Appeals has held that suit against a Sheriff in his

official capacity is suit against the Parish in which he sits. *Jacobs v. W. Feliciana Sheriff's Dep't*,

228 F.3d 388, 392 (5th Cir. 2000) ("suit against Sheriff Daniel in his official capacity is a suit against

the Parish"); *see also Corley v. Prator*, 290 Fed. App'x 749, 752 (5th Cir. Aug. 25, 2008) (suit

against sheriff in his official capacity "must be treated as suit against the municipality"); *Porche v.*

*St. Tammany Parish Sheriff's Office*, 67 F. Supp.2d 631, 635 (E.D. La. 1999) (Lemmon, J.) ("La.

Rev. Stat. § 33:4713 requires the parish to provide and bear the expense of offices as may be needed

by the sheriffs of the district and circuit courts."); *accord Victoria W. v. Larpenter*, 369 F.3d 475, 481

(5th Cir. 2004) (where sheriff's office employees sued in official capacity and the Parish were the

only remaining defendants, "[t]he Parish is thus the only true defendant remaining in the suit," citing,

*inter alia*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)).

In order obtain relief under 42 U.S.C. § 1983 against a parish or municipal defendant, the

plaintiff must show the existence of an officially adopted policy or an established custom of the local

governing body that caused injury and show a causal connection between that policy or custom and

the deprivation of a constitutional right. *Collins v. Doyle*, 209 F.3d 719, 2000 WL 284021, at *3 (5th

Cir. Feb. 9, 2000) (Table, Text in Westlaw) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). To identify officials or governmental bodies which speak with final policymaking authority for a local government, the court must focus on the specific "action alleged to have caused the particular constitutional or statutory violation at issue" and determine whether the party responsible for that action is the final policymaker in that particular area. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997).

The Louisiana Constitution provides that "the sheriff is the chief law enforcement officer of the parish in which he is elected. A sheriff is responsible to the people of the parish, and the functions are typically local. Although the sheriff enforces state laws and performs certain duties for the benefit of the state, these duties are generally performed only within a given parish." *Porche*, 67 F. Supp.2d at 635 (referring to La. Const. art. 5, § 27). The Sheriff in his official capacity is the final policy-maker on behalf of the Parish on the matters assigned to him. *Id.* As a parish official, as opposed to a state or city official, it would follow then that he acts on behalf of the Parish when he acts in his official capacity. Thus, suit against the Sheriff in his official capacity is actually suit against the Parish. *See Jacobs*, 228 F.3d at 392.

At the *Spears* Hearing, Davis asserted only *respondeat superior* type claims against Sheriff Stephens, conceding that the Sheriff had no direct involvement with his arrest. Davis has offered nothing to suggest that a policy decision by Sheriff Stephens was at issue during his arrest. Under § 1983, the plaintiff would have to show the existence of an officially adopted policy or an established custom of the local governing body that caused injury and show a causal connection between that policy or custom and the deprivation of a constitutional right. *Collins*, 2000 WL 284021, at *3 (citing *Monell*, 436 U.S. at 694). Davis did not allege any such matter in his complaint or at the *Spears* Hearing.

Davis has been provided an opportunity to state his best case as allowed by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). *See Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991). Without some suggestion from Davis that a policy decision by the Sheriff was a cause of his alleged deprivation, he has not stated a basis to hold the Sheriff liable under *Monell*, in his official capacity. His federal claims may be dismissed as frivolous and/or for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997.

Davis has also alleged state law claims of *respondeat superior* and negligence against Sheriff Stephens in his official capacity. Under Louisiana law, an employer will be vicariously liable for the tortious acts of his employee if the acts occurred while the employee was in the course and scope of his employment with the employer. This liability arises pursuant to La. Civ. Code art. 2320, which states in part that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." These state law claims against Sheriff Stephens shall proceed forward. *Accord Fontenot v. Toups*, No. 10-954, 2010 WL 5207596, at *4 (E.D. La. Dec. 14, 2010) (allowing state law *respondeat superior* claims to proceed after dismissal of § 1983 claims against the Sheriff); *Mannino v. Gautreaux*, No. 09-660, 2011 WL 5158299, at *1,*4 (M.D. La. Oct. 28, 2011) (same).

## IV.    Recommendation

It is therefore **RECOMMENDED** that Davis's § 1983 claims against Sheriff Stephens be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

It is further **RECOMMENDED** that Davis's state law claims of *respondeat superior* and negligence against Sheriff Stephens in his official capacity proceed forward.

It is further **RECOMMENDED** that Davis's § 1983 and state law claims against Corporal

Johnell Young, Deputy Jason Saltalmachia, Corporal John Scheurman, Lieutenant Richard Mendel,

and Lieutenant Raymond Theriot, each in their individual capacity proceed forward.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a

failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 5th day of December, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.